THE PEOPLE *ex rel.* The Board of Administration, Appellee, *vs.* THE PEORIA AND PEKIN UNION RAILWAY COMPANY, Appellant.

*Opinion filed June 22, 1916.*

1. PUBLIC UTILITIES—*the commission cannot adjudicate controverted contract rights.* The State Public Utilities Commission is not a court but an administrative commission, and it has no jurisdiction to adjudicate controverted rights of parties growing out of their contracts.

2. SAME—*commission cannot ignore decrees of courts.* A decree of the circuit court in a cause in which, having jurisdiction of the subject matter and of the parties, it enjoins a railroad company from transporting coal over a switch track in violation of a private contract is binding upon the State Public Utilities Commission until reversed by a proper appellate tribunal, and the commission has no jurisdiction to enter an order in disregard of the injunction.

3. SAME—*hearing before commission is not a judicial proceeding.* The hearing before the State Public Utilities Commission is not a judicial proceeding, and when a question of which a court has jurisdiction has been adjudicated by that court the adjudication is final, so far as the commission is concerned.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

FRANK T. MILLER, and JOHN M. ELLIOTT, (WILSON, WARREN & CHILD, of counsel,) for appellant.

P. J. LUCEY, Attorney General, LESTER H. STRAWN, and FRANK W. SULLIVAN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal by the Peoria and Pekin Union Railway Company from an order of the circuit court of Sangamon county affirming an order of the State Public Utilities Commission which directed the railway company to cease all discrimination relative to the shipment of coal or other commodities over a certain railroad track from its main line to the Peoria State Hospital at South Bartonville.

The appellant is a railroad corporation and has for many years operated a railway between the cities of Peoria and Pekin. The firm of Sholl Bros. was the owner of coal lands near the line of the road and near Bartonville. On July 16, 1896, the railway company entered into a contract with Sholl Bros. whereby the company agreed to put in a side-track for them from its main track to their coal mine, Sholl Bros. furnishing the right of way, grading and bridging from the main track to the mine, doing all the grading and bridging necessary for the tracks at the mine, and paying $300 as their proportion of the first cost of the ties to be used in constructing the side-track. The railway company agreed to furnish the balance of the ties and other material necessary for laying the side-track and necessary mine tracks and to maintain such tracks at its own expense. It was agreed that the railway company should at all times have the exclusive use of the tracks and right of way, and the right to use them in handling the business of or for the purpose of making connection with any other industry (except coal mine) that might thereafter be located adjacent to the right of way or reached from the right of way, pro-

vided that it should always do such other business in a manner which would not interfere with the business of Sholl Bros. The contract was to extend for twenty-five years from its date, and thereafter until either party gave sixty days' notice of its desire to terminate it. Sholl Bros. procured the right of way and the railway company built the side-track.

The asylum for the incurable insane at Bartonville was established by the State adjoining the property of Sholl Bros., and on July 13, 1899, the railway company entered into a contract with the commissioners of the asylum regarding additional railway tracks on the asylum grounds at Bartonville, for the purpose of facilitating the delivery of material for the buildings then in process of construction on the grounds, the commissioners to furnish a certain proportion of the material and pay the actual cost of laying the tracks and the railway company to lay such tracks upon the asylum grounds. It was agreed that when the service in the use of the additional tracks was performed the railway company might remove all the material placed there by it and that all material belonging to the commissioners should be left on the premises. Under this agreement additional tracks were laid upon the asylum grounds and connected with the side-track on Sholl Bros.' land. The name of the asylum was subsequently changed to the Peoria State Hospital. The buildings were ready for occupancy about February, 1902, and have ever since been used by the State and are occupied by about 2000 patients. The railway company's tracks laid on the hospital grounds were not removed upon the completion of the buildings, but; besides being used for the transportation of material for the construction of said buildings, have since been used for the transportation of supplies to the hospital, including coal. The railway company claims that until 1911 no coal was transported to the hospital over the Sholl Bros.' tracks without the

consent of Sholl Bros. first obtained. In 1911 the rail-
way company issued a supplemental tariff showing rates on
coal to the Peoria State Hospital. The railway company
gave notice to Sholl Bros. that it intended to haul coal for
other persons over the tracks in question, and thereupon
Sholl Bros., in the fall of 1913, filed a bill in the circuit
court of Peoria county for an injunction restraining the
railway company from transporting coal, during the con-
tinuance of the contract between the railway company and
Sholl Bros., over the tracks on the right of way mentioned
in that contract, not mined and produced on the lands or
by virtue of the coal and mineral rights of Sholl Bros.
Upon a hearing of this bill at the March term, 1914, an in-
junction was decreed in accordance with the prayer of the
bill. Thereupon the railway company, in compliance with
the injunction, ceased and refused to transport coal over the
tracks in question to the hospital. On December 7, 1914,
the petition in the proceedings now under consideration was
filed by the Peoria State Hospital with the State Public
Utilities Commission, showing the refusal of the railway
company to transport coal for the hospital over the tracks in
question and praying for such order in the premises as the
commissioners should deem proper. The petition averred
that the appellant gave as a reason for its refusal the de-
cree of the circuit court granting the injunction, and alleged
that the circuit court had no jurisdiction of the cause or of
the State or any of its officers, and that the decree was of
no force or effect as against the interests of the petitioner.

It is unnecessary to consider the merits of the proceed-
ing before the State Public Utilities Commission, because
we are of the opinion that that body had no jurisdiction to
make any order in the cause. The allegation of the peti-
tion that the circuit court had no jurisdiction of the cause
and that its decree was of no force against the petitioner
was manifestly erroneous. The Sholl Bros.' tracks over
which the petitioner sought to compel the hauling of coal

were built by the railway company in pursuance of a contract with Sholl Bros. The respective rights of the railway company, Sholl Bros. and the public in regard to those tracks depend on the construction and validity of that contract. The construction and validity of the contract were judicial questions. Long before the petition was filed with the State Public Utilities Commission a decree of the circuit court in a cause in which it had jurisdiction of the subject matter and of the parties had been rendered, adjudicating the exact meaning of that contract and enjoining the railway company from hauling over the tracks any other coal than that of Sholl Bros. The parties to the contract were the only parties necessary to that proceeding and the decree was binding on them. The railway company was enjoined from doing exactly the thing which it was sought by the petition to have it compelled to do. The commission had no jurisdiction to order the railway company to do what the decree of the circuit court enjoined it from doing. In the case of two courts of concurrent jurisdiction, the one which first obtains jurisdiction of the subject matter will retain it and no other court can render its judgment or decree nugatory by subsequently assuming jurisdiction. This is not a case of two courts of concurrent jurisdiction. The State Public Utilities Commission is not a court, but is an administrative commission charged with the performance of certain executive and administrative duties. The law does not authorize it to ignore the decrees of courts in matters coming before it, where the courts had jurisdiction of the subject matter and the parties. Its powers are subject to the action of the courts in matters of which they had jurisdiction.

In *Hunter* v. *Wood,* 209 U. S. 205, a statute fixing passenger and freight rates on railroads had been enacted in the State of North Carolina and a railway company had obtained in a Federal court a preliminary injunction against the enforcement of the statute. After the injunction was

granted, a ticket agent of the railway company having sold a ticket at a rate greater than that allowed by the State law but within the rate allowed by the injunction was convicted on a charge of overcharging for a railway ticket, in violation of the State law. It was held by the United States Supreme Court that he could not be proceeded against criminally for disobedience of the act fixing rates so long as he acted under and in obedience to the provisions of the injunction and that he was properly discharged upon a writ of *habeas corpus.* The State of Minnesota also passed a passenger rate law and the United States circuit court granted a temporary injunction restraining the State authorities from enforcing it. An agent of a railroad company was indicted in a State court and convicted of a violation of the statute. The Supreme Court of Minnesota, however, held that the orderly administration of law should not expose a litigant to punishment for not doing an act which a court, acting within its jurisdictional authority, had commanded him to refrain from doing, and reversed the judgment. *State* v. *Chicago, Milwaukee and St. Paul Railway Co.* 130 Minn. 144.

Little argument would seem necessary to show that where a court having jurisdiction of the subject matter and the person has determined the rights of parties in a controversy between them, an administrative commission or another court has no authority to take jurisdiction and render a contrary decision.

It is argued on behalf of the appellee that the circuit court did not have jurisdiction; that when the State Public Utilities Commission act went into effect, on January 1, 1914, the effect was to abate pending suits, or at least suspend them until the utilities commission itself had passed upon those which were within its jurisdiction. The State Public Utilities Commission has no jurisdiction to adjudicate upon the controverted rights of parties growing out of their contracts. The question of the effect of the contract

between the railway company and Sholl Bros. was a judicial question, of which the commission had no jurisdiction. The legislature had not the power to confer such jurisdiction even had it attempted to do so, and had not the power to take away or suspend the jurisdiction of the circuit court, to which the constitution has given original jurisdiction of all causes in law and equity. The commission might, in the course of its proceedings, have to take cognizance of the rights created by that contract, but it was not authorized to construe and apply the law and make a judicial determination of those rights. In the absence of a judicial sentence the commission could make such order, in the exercise of its administrative authority, as it deemed just and legal, and could exercise its judgment as to the effect of the contract, leaving the parties to such legal or equitable remedies as they might be entitled to. A hearing before the commission is not a judicial proceeding, though the statute provides for an appeal to the circuit court of Sangamon county. When a question of which a court has jurisdiction has been adjudicated by that court the adjudication is final, so far as the commission is concerned. Whether the determination of the circuit court was right or wrong, it must be accepted in this case as settling the rights of the parties. Until reversed by an appellate tribunal it is as final and conclusive as a judgment of this court and must be so treated.

The judgment of the circuit court is reversed and the cause remanded, with directions to set aside the order of the State Public Utilities Commission.

*Reversed and remanded, with directions.*