Forster I. Mitchell, Appellant, v. Illinois Central Railroad Company and W. E. Beach, Trading as Illinois Independent Oil Company, Appellees.

## Gen. No. 9,356.

Opin-
ion filed February 24, 1943.

RICHARD W. VELDE and WILLIAM M. COPPELL, both of Havana, for appellant.

GRAHAM & GRAHAM, of Springfield, and EPLER C. MILLS, of Virginia, for certain appellee; VERNON W. FOSTER, CHARLES A. HELSELL and JOHN W. FREELS, all of Chicago, of counsel.

KENNETH H. LEMMER, of Havana, for certain other appellee.

MR. JUSTICE DADY delivered the opinion of the court. This is an appeal by Forster I. Mitchell from a final decree of the circuit court of Mason county, dismissing for want of equity a complaint by which Mitchell sought to have the Illinois Central Railroad Company and W. E. Beach enjoined from using or permitting to be used as a retail drive-in filling station a certain portion of the right of way of the railroad company

located in the city of Havana, Illinois. The complaint also prayed that the defendants be required to remove the gasoline tanks and retail filling station located thereon.

After the case was at issue it was referred to a master in chancery, who took the proofs and filed his report recommending the complaint be dismissed for want of equity. The chancellor overruled exceptions to the report and entered the decree appealed from.

There is no material dispute on the facts.

Mitchell has a fee simple title to the premises, having acquired such title on January 4, 1940. His title is subject to the rights of the railroad company herein referred to.

The rights of the railroad company are based, as assignee, on a deed from one Ross and wife, dated November 25, 1879, by which Ross and wife, as the owners in fee, conveyed a strip of land 100 feet in width to the Champaign, Havana and Western Railway Company, its successors and assigns, "for the purpose of constructing, maintaining and operating thereon a single or double track railway, with all the necessary appurtenances, . . . ." From the delivery of such deed in 1879 until the delivery of the Beach lease herein referred to the premises in question were used for no purpose other than railroad purposes.

Beach, doing business as Illinois Independent Oil Company, operates 11 bulk and 19 retail drive-in gasoline stations in central Illinois. Prior to the lease in question he had and has in Havana one bulk station of 70,000 gallons capacity, located on the right of way of the railroad company and a few city blocks distant from the station in question. He operates 2 retail drive-in stations in the city of Havana, besides the one in question. Beach is one of the large shippers of petroleum products using the defendant railroad in this area.

On March 14, 1940, by written lease, the railroad company leased the real estate involved in this suit, consisting of about 5,040 square feet of such right of way, to Beach, for the period beginning March 14, 1940, and ending March 14, 1945, for the rental of $50 per annum. The lease provided that the premises were to be used and occupied exclusively as a site for a "combination bulk oil and filling station," and that the lessor might terminate the lease and the tenancy thereby created at any time by giving the lessee 60 days' notice of such intention. The lease was duly approved by the commerce commission of this State. Mitchell had nothing to do with the making or the approval of the lease.

There are several other retail filling drive-in stations in the immediate vicinity, one of them owned by Mitchell which is located about 250 feet distant from the premises in question.

About March 15, 1940, Beach entered into possession of the premises so leased to him and thereafter constructed thereon a filling station, installing thereon two 2,000 gallon underground gasoline tanks. Thereafter Beach sold from this station, at retail and to the general public, gasoline, oil and similar products. At such station Beach proposes to install two additional underground tanks, one of 2,000 gallons and one of 6,000 gallons capacity.

Practically all gasoline handled at such station is delivered direct to the storage tanks from tank cars on the railroad, although Beach is not bound under any contract with the railroad to use tank cars in bringing gasoline to his station. Beach testified that he expects such station will use, when in full operation, about twelve 8,000 gallon tank cars of gasoline per year. The freight rate is from $200 to $225 per car for shipment from Oklahoma, $90 per car from East St. Louis and $40 per car from Southern Illinois. Most of Beach's shipments are from Oklahoma. Oil

and other supplies are delivered to the station by truck.

Two principal questions are involved: (1) Whether the railroad company had the right to rent and Beach, as lessee, had the right to use the premises as a retail drive-in filling station; (2) Whether relief can be had by Mitchell by way of injunction.

Beach, of course, has no greater rights than his lessor could give him.

It is not contended that by virtue of the Ross deed the grantees therein acquired or the present railroad company has any greater rights than an easement for railroad purposes. (*Tallman v. Eastern Illinois & Peoria Ry. Co.*, 379 Ill. 441.) While an easement of this nature possesses most of the qualities of a fee title and confers upon the railroad the right of exclusive possession (*Illinois Cent. R. Co. v. Houghton*, 126 Ill. 233), there still exists the limitation that the property subject to the easement must be used for railroad purposes. (*Illinois Cent. R. Co. v. City of Chicago*, 141 Ill. 509.) The general rule appears to be that a railroad may use its right of way over property acquired by way of easement for any purpose that is reasonably necessary or convenient to the maintenance and operation of the railroad. (*Illinois Cent. R. Co. v. Wathen*, 17 Ill. App. 582.)

Defendants have cited a number of cases from other jurisdictions, most of which are collected in a note in 36 L. R. A. (N. S.) 512, in which it has been held proper for a railroad to use or lease portions of its right of way for such purposes as the erection of coal yards and sheds, grain elevators, warehouses, corn cribs, lumber yards, stock yards, and a hotel for railroad employees and the general public. A careful reading of these cases will show that in each case the use permitted was directly connected with the business of the railroad itself. In most of the cases cited the particular structure or building was erected

for the convenience of shippers in the storage of merchandise and materials shipped or to be shipped over the railroad. We do not regard these cases applicable to the particular facts in the case before us.

The Illinois case principally relied upon by the defendants is *Illinois Cent. R. Co. v. Wathen,* 17 Ill. App. 582, which case has been cited with approval many times by courts of other jurisdictions but has not, insofar as we know, been cited in any opinion of an Illinois court of review. In the *Wathen* case the court held that the defendant railroad companies had the right, without the payment of rent, to permit the erection and use of elevators, corn cribs, lumber yards and lime houses on portions of the railroad right of way. In so holding the court said: ''One of the leading branches of the business of railroads is that of carrying freight. In order that it may carry on this business with facility and dispatch, it is necessary to have suitable grounds and buildings for the receipt and deposit of freight to be transported and for the discharge of freight received. . . . And . . . the ground and buildings that were used by the lessees in this case were necessary to enable these railroad companies to carry on their business as carriers of freight with dispatch and convenience. . . . The evidence in this case clearly establishes that the use to which the ground and buildings has been put is to facilitate the business of these railroad companies in the receipt, transportation and discharge of freights.''

In the case before us, although Beach testified that he intended to use the station in question as a combination bulk and retail station, the evidence shows that up to the time of the hearing the station had not been used as a bulk station, but only as a retail drive-in filling station, and that the type of storage tanks used on the premises were the type customarily used for the retail sale of gasoline rather than for the sale of gasoline in bulk. Plaintiff by his complaint seeks

only to enjoin the use of the property as a retail filling station. We are thus confronted with the question whether the use of such property as a retail filling station can be considered as facilitating the business of the defendant railroad in the receipt, transportation and discharge of freight within the rule laid down in the *Wathen* case.

Defendants contend that the business of the railroad is facilitated by the use of the premises for the sale of gasoline due to the fact that the bulk of the gasoline sold at the station is shipped over the defendant railroad and that the company will receive needed revenue from this source. This same contention was considered by the U. S. Circuit Court of Appeals for the seventh district in *In re Chicago & N. W. Ry. Co.*, 127 F. (2d) 1001, and the court there held that the operation of a retail filling station at Rockford, Illinois, upon premises in which the railroad company possessed easement rights constituted a misuser of the servient property. This case concerned the interpretation of the grant of an easement made in Illinois and the court therefore based its decision upon Illinois law. We regard this case so nearly in point that we set out the court's opinion on the question *in extenso*: "The distinction between what is a proper and an improper use is not always clear and is often a question requiring nice discriminations. . . . The evidence clearly discloses that the use of the leased premises is for an ordinary retail filling station, notwithstanding the language of the lease. The question to be determined is whether a retail filling station is a misuse of the servient land. Illinois has recognized uses which facilitate the railroads' business, but certainly the fact that a business receives its goods by rail is not a conclusive determination that the use of easement land by the business is a proper one and not a burden. In fact the Supreme Court of Illinois in *R. I. & P. Ry. Co. v. Leisy Brewing Co.*, 174 Ill. 547, 559, expressly ap-

proved the doctrine in Lance's appeal, 55 Pa. 16, that 'No one can pretend that a railroad company can build private houses and mills, and erect machinery, not necessarily connected with the use of their franchise, within the limits of their right of way. If it could, stores, taverns, shops, groceries and dwellings might be made to line the sides of the road outside of the track—a thing not to be thought of under the terms of the acquisition of the right of way.' The problem is always one of degree. In the instant case the filling station was not an incident to the legitimate use of the easement; it was the use itself. Clearly, it may not exist under the terms of the easement. To hold that it was proper would be an open invitation to abuse. We note without comment that a bulk station was held to be a proper use in *Weir v. Standard Oil Co.,* 136 Miss. 205, but that is not our case.''

An Illinois case which throws some light on the question is *Dickman v. Madison County Light & Power Co.,* 304 Ill. 470. Dickman was the owner of the fee over which the railroad company, referred to as the traction company, had a right of way easement. The traction company installed on its right of way poles and cross arms with high tension wires for carrying electricity generated by the traction company. Three of such wires were owned by the power company and were used by the power company in distributing electricity to its customers. Dickman, the owner of the fee, brought an action of ejectment against both companies. The Supreme Court said that if the structures so erected on the right of way were not within the scope of the original easement, they were illegal and such an additional burden on the fee as to enable Dickman, as owner of the fee, to maintain an action of ejectment for the removal of such high tension wires, and on page 482 that ''the question is whether or not the wires were erected in good faith with a view to be used by it (the traction company) in

the future in its business as a railroad company after making the proper change in the current, or whether such construction was solely for the use of the power company in the pursuit of a different business from that conducted by the railroad company and for the profit of both companies. If the wires were constructed with the latter motive, their construction was illegal and wrongful, but if for the former reason, their construction was legal and the appellant (Dickman) cannot recover in this suit.''

It is our opinion that in the present case the use of the right of way as a retail filling station was an additional burden on the fee outside the scope of the original easement and that it was illegal for the defendant railroad to permit the use of, and for the defendant Beach to occupy or use the premises in question as and for a retail filling station.

We find no merit in defendants' contention that the approval of the lease in question by the commerce commission is a decision that the lease is for a proper railroad purpose. Such a decision, even if it were binding in an attack by the State itself on the question whether the lease was *ultra vires,* can have no effect upon the property rights of the plaintiff in the present proceedings. An administrative agency, such as the commerce commission, is not a judicial body and it has no jurisdiction to adjudicate controverted individual property or contract rights. (*People v. Peoria & P. U. Ry. Co.,* 273 Ill. 440.)

The further question remains whether the plaintiff, as the owner of the fee is entitled to relief by way of injunction to prevent the continued use of the premises as a retail filling station. Defendants insist that, under the authority of *Dunn v. Youmans,* 224 Ill. 34, plaintiff must show an actual and substantial injury and not merely a technical or inconsequential wrong entitling him only to nominal damages. We do not think that this rule applies to the facts in the present

case. We believe the correct rule is set forth in the case of *Springer v. City of Chicago*, 308 Ill. 356, at page 364, where the court says: "Injunction is a proper remedy of the owner when an unlawful appropriation of his land is attempted for the use of a public corporation which has not acquired the right of such appropriation by condemnation or otherwise. In such cases courts of equity act upon broader principles than in ordinary cases and have granted equitable relief without regard to the existence of legal remedies, irreparable injury or other equitable considerations." In *Burrall v. American T. & T. Co.*, 224 Ill. 266, the court held that the owner of the fee was entitled to an injunction to prevent the defendant company from imposing an additional burden upon the fee. In *McIntyre v. McIntyre*, 287 Ill. 544, 549, the court said: "Courts of equity will relieve against a continuing trespass where there is no adequate remedy at law." (See Jones on Easements, sec. 879; *Newell v. Sass*, 142 Ill. 104; *Crullen v. Edison Elec. Illuminating Co.*, 254 Mass. 93, 149 N. E. 665.) In *Lidgerwood Estates v. Public Service Electric & Gas Co.*, 113 N. J. Eq. 403, 167 Atl. 197, the court said: "Equity's jurisdiction to restrain a continuing trespass has long been settled . . . and this court has often entertained jurisdiction to enjoin the use of an easement in a manner different from the grant."

There is at least some evidence tending to show that the premises, as improved and as proposed to be improved, are adaptable to and are contemplated being used as a bulk station. Inasmuch as the plaintiff is not here contending that such bulk station use would be an improper one, the question of the propriety of such use is not before us.

We are of the opinion that the plaintiff was entitled to a decree enjoining the defendants from using or permitting the premises in question to be used as and for a retail drive-in gasoline filling station, but not to

a decree requiring the removal of the improvements thereon.

The cause is reversed and remanded with directions to the trial court to enter a decree enjoining the defendants from using or permitting the premises in question to be used as and for a retail drive-in gasoline filling station.

*Reversed and remanded with directions.*