Joe Simpkins, Plaintiff-Appellee, v. George Maras and Sophie Maras, Defendants-Appellants.

Gen. No. 10,156.

Third District.

April 23, 1958.

Released for publication May 9, 1958.

239

Weilepp, Wilson and Dyar, of Decatur (Vernon H. Houchen, of counsel) for appellants.

Hershey & Bliss, of Taylorville, and Craig & Craig, of Mt. Vernon, for appellee.

JUDGE REYNOLDS delivered the opinion of the court.

This suit involves the right to drill for oil on certain land owned by George Maras and Sophie Maras, in Christian county, Illinois. Prior to 1906 the land involved, hereinafter called the "land," was owned by Isaac Hoover, Jr., in fee simple, and on April 6, 1906, Isaac Hoover, Jr., with his wife, Amanda Hoover, conveyed by warranty deed the "coal and other mineral underlying the surface" of the land, "together with the following rights and privileges, to-wit: to enter under the surface of said premises, and mine, dig and remove the coal and other mineral therefrom," to the Illinois Midland Coal Company. Later Midland Coal Company was merged into and became part of Peabody Coal Company. Peabody Coal Company later made its oil

and gas lease covering the land, to Sentry Royalty Company, and the Sentry Royalty Company assigned this lease to the plaintiff herein, Joe Simpkins. In 1916 Isaac Hoover, Jr., died and by his will the land involved herein was devised to Isaac Merle Glass. In 1931 Glass and his wife, by their warranty deed, conveyed the land herein to George Maras and Sophie Maras, as joint tenants, except the coal and other minerals underlying said land. In 1955 oil was discovered on lands adjoining this land, and oil wells were drilled on these adjoining lands. In October 1955, the defendants gave an oil and gas lease for these lands to Archie Schryver and Frank Sgro. These lessees after unsuccessful negotiations with Peabody Coal Company, brought suit in the Circuit Court of Christian county against Peabody Coal Company to quiet title, to remove clouds upon the title and to establish title, asserting that Peabody Coal Company had no easement or right to enter upon the surface of the land, and asking for an injunction against Peabody Coal Company, its successors or assigns, from asserting any right or title to the oil and gas underlying the land, and to enjoin Peabody Coal Company, its successors or assigns from entering upon the surface of the land for any purpose whatever. This suit is still pending. On August 14, 1956, Glass and his wife conveyed by mineral deed all their right, title and interest in and to the oil, gas and other minerals underlying the land, to Russell Fletcher, and on the same day, the grantee Fletcher, conveyed by mineral deed the same rights in the land to R. H. Throop and Juanita Throop. On February 13, 1957, one Burton Deck was appointed conservator of the Estate of Isaac Merle Glass, and later, upon authority granted by the County Court of Christian county, executed an oil and gas lease to Joe Simpkins, the plaintiff herein.

In September 1957, the plaintiff commenced the instant suit against the defendants George Maras and

241

Sophie Maras, praying for a temporary injunction, to enjoin the defendants, their agents, servants, employees and attorneys from preventing the plaintiff, his agents or assigns, from entering upon the premises and using so much of the surface as may be necessary to drill for, mine and remove the oil and gas therefrom, and also praying for judgment that the defendants have no right, title or interest in and to the minerals, leasehold, estate, or any oil and gas lease, and that their surface rights are subject to plaintiff's rights to mine and remove the oil and gas. The court granted a temporary injunction on September 20th, 1957, and on the same day the defendants filed their answer to the complaint. With their answer, the defendants also filed a motion to dissolve the temporary injunction. On September 25, 1957, the court denied the motion to dissolve the temporary injunction. From that order of denial, an appeal was taken to this court.

The defendant assigns five grounds for reversal. 1. That the claim of the plaintiff was founded upon a written instrument, and that the complaint failed to comply with the terms of Section 36 of the Civil Practice Act, in that a copy of the lease was not attached to the complaint, or that the complaint did not set out in detail the terms of the lease or leases. 2. That the complaint failed to charge sufficient facts to show that irreparable injury would result if the injunction was not granted. 3. That a prior suit in equity pertaining to the same matter was pending. 4. That other persons should have been made parties to the cause. 5. That a temporary injunction is only to preserve the status quo until a hearing could be had on the merits, and where the effect of the temporary injunction would be to disturb rather than to maintain the status quo, the granting of the injunction was reversible error.

Taking up the first point, Section 36 of the Civil Practice Act says:—

"If a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his pleading an affidavit stating facts showing that the instrument is not accessible to him."

This being a suit for injunction only, insofar as the matter is before this court, the question arises as to whether this lease is such an instrument upon which the suit is based, so as to fall within the provisions of Section 36 of the Civil Practice Act, or merely evidentiary in connection with the application for the injunction.

The defendants cite the case of Morris v. Goldthorp, 390 Ill. 186, in support of their contention on this point. This was a suit for specific performance under a contract and option. The court in that case held that the contract upon which the action was founded, consisted of the option and the appellant's acceptance of its terms, and that it was the duty of the plaintiff to either set out in the complaint the written acceptance of the option on which he relied, or to attach such a copy thereof to the complaint.

The Morris v. Goldthorp case is quoted in the case of Welsh v. Jakstas, 401 Ill. 288, at page 294, that case also being a suit for specific performance. While the court in the latter case, in passing on the failure to have a copy of the option agreement attached to the complaint, goes on to say: "It is apparent from the record in this case that appellants were not injuriously affected or in any way prejudiced by the fact that the complaint did not set out in haec verba the written notice of acceptance. It is not contended that the appellants were not fully aware, at the time the complaint was filed, of the contents of the written notice and of the manner in which and to whom and where such notice was given. The rule is that to authorize a reversal of a decree it must not only appear that an

243

error intervened, but the record must contain enough to raise and justify the inference that the error was prejudicial, or probably prejudicial, to the party who asks reversal." Citing Bettis v. Green, 171 Ill. 495.

In the case of H. E. Mueller & Co. v. Kinkead, 113 Ill. App. 132, decided in 1903, the court in that case held that the Practice Act only required the plaintiff to file with his declaration a copy of the instrument on which the action is brought, and does not contemplate the necessity of filing a copy of every paper which may properly be offered in evidence.

▮ Thus, the question as to whether or not a copy of the lease should have been attached to the complaint, rests upon the point as to whether the action is founded on the lease, or is based upon the alleged wrongful actions of the defendants, and the lease is merely evidence of plaintiff's right to the injunction. We are inclined to view the latter as the proper interpretation. Here the original mineral deed to mineral rights under the land was to the Illinois Midland Coal Company. That company became merged into the Peabody Coal Company. The Peabody Coal Company assigned its rights to Sentry Royalty Company, and it in turn assigned to the plaintiff. This constitutes the chain of title and while it might be necessary to present this chain of title as evidence in order to justify the right of the plaintiff to bring his suit for injunction, these are matters of evidence only, the gist of the action and the ground upon which the action was brought being that the defendants refused to permit the plaintiff as holder of the right, to enter upon the lands and drill for oil. The injunction was asked because the defendants, as holders of the surface rights to the land, refused to permit the plaintiff to exercise his rights under the land. The rights of the plaintiff and the rights of the defendants as to ownership are evidentiary in character, and while each must be established, the basis of the suit is the refusal of the defend-

244

ants to permit the drilling for oil and access on and over the surface of the land to do such drilling.

Where the action is founded on a written instrument, the rule would be different, because in that class of cases, the suit is based upon the written instrument. Here that is not the case.

■ The second point raised by the defendants is that the complaint failed to charge sufficient facts to show that irreparable injury would result if the injunction was not granted.

The complaint recites that he had attempted to move his well drilling rig upon the land but that the defendants and each of them had interfered and prevented the plaintiff in his operations for the drilling of said oil well and had threatened the plaintiff if he continued in his efforts. That such actions would tie up the machinery and equipment of the plaintiff, and result in great expense and damage to the plaintiff, and on these assertions claims that unless the injunction is issued, the plaintiff will be irreparably injured and damaged.

The case of Washingtonian Home v. Chicago, 281 Ill. 110, is cited by the defendant. That court at page 119 of the opinion said: "It may be said that an injury is irreparable when it is of such a nature that the injured party cannot be adequately compensated therefor in damages, or when the damages which result therefrom cannot be measured by any certain pecuniary standard."

In the case of Vulcan Detinning Co. v. St. Clair, 315 Ill. 40, the court said: "In order to entitle one to relief by injunction against unlawful interference with his business positive and substantial injury must be shown, and where it appears that the injury is not of an irreparable nature and that the wrongs suffered by the plaintiff may be fully and adequately redressed by an action at law for recovery of damages, relief by injunction should be denied."

245

It is generally recognized that the business of drilling for oil is one of the most hazardous of business enterprises. This court knows of no measure of damages that could be used to determine in advance what would properly and adequately compensate the oil well driller, for damages occasioned by interference and denial of his right to drill upon land.

It must be remembered that the title of the defendants did not include the mineral rights. The deed to them excepted the mineral rights. It must also be remembered that oil wells were being drilled to the north of this property. This was not a matter where the holder of the right to drill, Simpkins, could sit still and afterwards recover in a court of law adequate compensation for any damages ascertained. It does not follow that because there is a remedy at law, that equity, in proper cases cannot step in and afford a remedy. As said in the case of Warfield-Pratt-Howell Co. v. Williamson, 233 Ill. 487, "If the remedy in equity is more adequate because of some special circumstance of the situation, the jurisdiction of equity will be sustained." This is affirmed in the case of Cordell v. Solomon et al., 234 Ill. App. 430.

In the case of Rago v. Village of Melrose Park, 161 Ill. App. 18, that court said: "It is a familiar principle concerning injunctions pendente lite, that they will be granted and continued in doubtful cases until final decree in the litigation if it appears that less harm from this course will result to the enjoined party if he should be finally victorious than would accrue to the complainant from the absence of the injunction if he were the winning party."

And in the case of Young v. Federal Union Surety Co., 183 Ill. App. 278 (quoting from City of Newton v. Levis, 79 Fed. 715), the court there laid down this rule: "The controlling reason for the existence of the right to issue a preliminary injunction is, that the court

may thereby prevent such a change of the conditions and relations of persons and property during the litigation, as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. When the questions to be ultimately decided are serious and doubtful, the legal discretion of the Judge in granting the writ, should be influenced largely by the consideration that the injury to the moving party will be certain, great and irreparable if the motion is denied, while the inconvenience and loss to the opposing party will be inconsiderable and may well be indemnified by proper bond if the injunction is granted." Here the plaintiff has executed his bond in the amount of $10,000 to the defendants.

In view of these cases, and in view of the uncertain nature of the oil drilling business, this court is of the opinion that sufficient facts were shown by the complaint to entitle the plaintiff to the temporary injunction.

■ The third point raised by the defendants was that a prior suit in equity pertaining to the same subject matter was pending. This point is well taken, if the suit pertained to the same subject matter, the same parties, and a determination of the prior suit would determine the rights of the parties in the instant suit. But an examination discloses that there were various other parties in the prior suit; that the interests were diverse, and apart from the issues in this cause; that the relief sought was not the same, and that the chain of title was not the same. Under the circumstances, we must conclude that this matter rested in the sound discretion of the court, and uphold the action of the court in his ruling on this matter.

The same ruling would apply to the fourth point raised by the defendants.

■■ The fifth and final point raised by the defendants is that the effect of the temporary injunction

247

would be to disturb rather than to maintain the status quo of the parties. The defendants contend that before a final determination of this case on the merits could be obtained, the plaintiff could have recovered all the oil under said land, piped it off and even though the defendants were ultimately successful in their contentions, the oil would have been removed and the defendants would have lost their bargaining rights. In support of this position the defendants cite the following cases: Peoples Gas Light & C. Co. v. Cook Lumber Terminal Co., 256 Ill. App. 357; Northern Illinois Coal Corp. v. Langmeyer, 340 Ill. App. 423; Kabureck v. Stookey, 1 Ill.App.2d 181. An examination of these cases discloses the general law of the State of Illinois as to the purpose of a temporary injunction, which is well stated in the case of Northern Illinois Coal Corp. v. Langmeyer, 340 Ill. App. 423, at page 431, where that court says: "It seems to us significant, however, that in all of the cited Supreme Court cases, commencing in 288 Ill. and up to and including 380 Ill., the Supreme Court has in every case cited said that the office of a temporary injunction is to preserve the status until a final hearing."

The case of Kabureck v. Stookey, 1 Ill.App.2d 181, affirms this general rule where it says: ". . . the purpose of a temporary injunction or restraining order is the preservation of the status quo."

These cases state the general law but do not bear out the contention of the defendants that the injunction will disturb rather than preserve the status quo.

In this case the trial court has issued a temporary injunction. By the issuance of this order the trial court has determined the necessary elements for a temporary injunction to exist. In order that the status quo may be preserved until final disposition and in order to protect the rights of the defendants, the trial court has required the filing of a bond by the plaintiff in

248

the amount of $10,000. Evidently the trial court in issuing the temporary injunction did not believe that the rights of the defendants would be injured or lost during the term of the injunction, but as an added safeguard required the bond.

■■■■■ Our courts have uniformly held that great caution should be exercised in the granting of injunctions. Hope v. Hope, 350 Ill. App. 190. Such an order is considered an extraordinary remedy, and great caution should be exercised in its issuance. Republican Central Committee of Cook County v. Cook County Regular Republican Organization, 348 Ill. App. 189. A temporary injunction should be issued with caution. McHard v. Gibb Motors, Inc., 1 Ill.App.2d 225. But the issuance of the order having been ordered, this court will not disturb the findings of the trial court except where the discretion given the trial court is abused. The granting of a temporary injunction rests largely in the discretion of the trial court, . . . and a temporary injunction should not be refused merely because the court may not be absolutely certain that plaintiff or counterclaimant has right he claims. O'Brien v. Matual, 14 Ill.App.2d 173. An application for an injunction is addressed to the conscience and sound discretion of the court, and it is not controlled by technical legal rules, and unless a reviewing court finds that the discretion has been abused, the order will not be set aside. Shatz v. Paul, 7 Ill.App.2d 223; Cragg v. Levinson, 238 Ill. 69; Bernard Bros., Inc. v. Deibler, 326 Ill. App. 538. In determining whether a temporary injunction should be granted, the trial judge may take into consideration the adequacy of the remedy at law, and desirability of maintaining the status which prevailed before the dispute arose, and is allowed a wide measure of discretion in granting or denying the relief prayed in the light of such factors. Kabureck v. Stookey, 1 Ill.App.2d 181; McDou-

gall Co. v. Woods, 247 Ill. App. 170. Granting of an interlocutory injunction necessarily rests largely in judicial discretion to be exercised in view of the facts of the particular case. Drainage Com'rs of Sub-Dist. No. 1 of Drainage Union Dist. No. 1 v. Russell, 336 Ill. App. 604. The granting of an interlocutory injunction necessarily rests largely in judicial discretion to be exercised in view of the particular facts. Finn v. Emmaus Evangelical Lutheran Church, 329 Ill. App. 343. Decree denying plaintiff an injunction and granting defendant an injunction under counterclaim would not be disturbed by the Appellate Court on issues of fact unless it appeared that the decree was contrary to the manifest weight of the evidence. Goodman v. Motor Products Corp., 9 Ill.App.2d 57.

There are many other cases where our courts have expressed similar views, but it would serve no useful purpose to cite further cases. The law is plain that the issuance or denial of an injunction rests in the sound judgment and discretion of the trial judge. And unless it appears that this discretion has been abused, the reviewing court will not disturb his findings. We find no such abuse of discretion, and for the reasons stated, the judgment will be affirmed.

Affirmed.

CARROLL, P. J. and ROETH, J., concur.