Vern C. Peterson, John V. Hehn, William C. Nichol, Earl R. Foswold, George Peterson and A. R. Starr, Plaintiffs-Appellees, v. Domestic Utility Services Company and Victor Yacktman, Defendants-Appellants.

## Gen. No. 48,486.

First District, Second Division.
December 5, 1961.
Rehearing denied February 2, 1962.

Melvin B. Lewis, of Chicago, for appellants.

Harry R. Booth, of Chicago, for appellees.

MR. JUSTICE BURKE delivered the opinion of the court:

The parties are substantially the same as those who were before this court in Peterson et al. v. Yacktman, 25 Ill App2d 208, 166 NE2d 452. In the instant case there is an additional party, Domestic Utility Services Company, a water utility operated by Yacktman. Following the denial by the Supreme Court of leave to appeal from the judgment of this court in the earlier case, the judgments were paid. The parties mutually canceled the prior agreements which consisted of a "subscription agreement for water services" and an "agreement for water supply." Thereupon, defendants notified plaintiffs of their intention to discontinue water service. Plaintiffs immediately filed a complaint (October 10, 1960) for injunction to restrain the discontinuance of the service. Plaintiffs moved for an immediate temporary injunction. The motion was entered and continued upon the agreement that the water service would be restored on a temporary basis under the same conditions as had existed prior to the denial of leave to appeal, without prejudice to the rights of any party. It was further agreed that the service would not be discontinued without due notice to the plaintiffs and the court.

The defendants in their answer stated that the plaintiffs are estopped to present their claim by reason of

375

their earlier recovery upon the theory that Yacktman defrauded them by falsely pretending that he operated a water utility, so that the two complaints are totally inconsistent. Defendants also stated that granting the plaintiffs the relief sought would be a detriment to all other utility customers because the cost of providing service to the plaintiffs was in excess of the cost of service to the other customers. Defendants further stated that the plaintiffs had been receiving water in their homes for more than twenty years prior to subscribing to the defendant's service and that other sources of water, geographically closer than the defendants' supply, were available to the plaintiffs. Plaintiffs filed a motion to strike defendants' answer, or in the alternative, certain paragraphs thereof, on the ground that it sought to relitigate issues determined in the prior case, and that it contained irrelevant, scandalous and immaterial matter. The motion was not disposed of at the time of this appeal. Subsequent to the filing of their answer defendants moved to dismiss the complaint on the ground that the "maximum relief to which plaintiffs could have been entitled would have been a sufficient period of time to apply to the Commerce Commission for relief"; and that plaintiffs had not initiated any proceeding before the Commerce Commission. This motion was denied. All other pending motions were set for hearing on April 7, 1961, at which time the case had been pending for almost six months. Throughout that period water service had been furnished the plaintiffs and no notice of any intent to discontinue that service had been given. After hearing arguments of counsel the court on April 7, 1961 entered an order for a temporary injunction. The order made findings of fact in accordance with the allegations of plaintiff's complaint, even where controverted by the answer. No evidence was heard. The defendants were enjoined from tak-

ing any steps to discontinue the water service to the plaintiffs. Defendants prosecute this appeal.

■ On the day the complaint was filed the defendants restored the water service. This was done pursuant to the agreement made in open court to restore and continue the service unless due notice be given plaintiffs and the court. At the hearing the attorneys for plaintiffs stated that the agreement had been observed. At the time of the injunctive order service had been furnished under the agreement for a period of six months. There was no need for an injunction to preserve the status quo. Should the defendants threaten to discontinue the water service, plaintiffs could present a supplemental complaint and the chancellor would have an opportunity to decide whether to grant a temporary injunction. Ordinarily, a temporary injunction is granted as a matter of emergency. The court should exercise caution in granting injunctions. In Hinson v. Ralston, 100 Ill App 214, the court said (219): "Injunctions are not granted because they will do no harm." An otherwise proper request for an injunction will not be defeated by defendant's assurance to the court that he will no longer give cause for its issuance. This is not what happened here. In the case at bar plaintiffs moved for an injunction and settled for an agreed order.

■ The chancellor expressed doubt as to jurisdiction over the matters in controversy in the instant case. Some of the cases relied upon by the plaintiffs relate to utilities operated by municipalities or other subdivisions of the State. Section 10.3 of the Public Utilities Act excludes these utilities from the operation of the Act. These cases would not be helpful. Under that Act the courts do not have the power to require a utility to extend its service on a permanent basis or to prescribe the rate of service or the terms and conditions thereof. These are matters cognizable

377

only by the Commerce Commission, and the court is not concerned with them save on administrative review. The prayer for a temporary injunction is only incidental to the permanent relief sought by the complaint.

The writer of this opinion, consistent with the views expressed in his dissent in the previous case, agrees with the contention of the defendants that the plaintiffs are estopped from urging their position in the present complaint by reason of their contrary position in the earlier litigation. The writer is also of the opinion that the plaintiffs do not present a case for equitable relief. See Biehn v. Tess, 340 Ill App 140, 145, 91 NE2d 160. Therefore the order of April 7, 1961, is reversed.

Order reversed.

FRIEND, P. J. specially concurring: I concur in the finding that the temporary injunction was improvidently issued and the reasons therefor, but not in the finding that plaintiffs do not present a case for equitable relief.

BRYANT, J. dissenting:

There is no estoppel in the present case. To so hold would be a confusion and relitigation of the first Peterson case, Peterson v. Yacktman, 25 Ill App2d 208, 166 NE2d 452, which is to be regarded by this court as res judicata. A dissenting view as to the correctness of the prior case should not be considered in this review of the temporary injunction, especially after the Illinois Supreme Court declined further review of the prior case.

There is neither a technical estoppel by record, nor equitable estoppel. This is clear from a reading of the record in the instant case and the opinion in the

prior case. Allegations made in a prior case do not as a rule operate as an estoppel by record in a subsequent case, especially where the pleadings are not inconsistent with the position subsequently assumed by the pleader. ILP Estoppel § 3. See Espadron v. Davis, 385 Ill 304, 52 NE2d 716.

In the prior case the plaintiffs had paid various sums of money for the installation of transmission mains and other properties. These payments were made between July 1, 1956 and June 30, 1957, and plaintiffs had relied on the fraudulent misrepresentations of defendant Yacktman that he operated a public water utility under the laws of Illinois and could compel such payments. In the instant case the additional defendant, Domestic Utilities Service Co., did not secure a Certificate of Convenience and Necessity until February 4, 1958, even though it may have been acting as a public utility prior to that time. The material allegations here concern Domestic as a public utility, who was not a party to the prior litigation, and the unjustified discontinuance of water service. There is no inconsistency in the allegations.

As to equitable estoppel, there has been no misrepresentation or concealment of material facts, and no reliance or change of position by the other party. Lowenberg v. Booth, 330 Ill 548, 162 NE 191.

That equity has jurisdiction in cases involving discontinuance of water service is well stated in City of Lawrenceville v. Central Ill. Pub. Serv. Co., 197 Ill App 59, at 66, 67, 68:

> "Counsel for appellant state that the only question is, in what forum shall the controversy be settled . . . Also that: 'The State Public Utilities Commission is the only forum that has jurisdiction of the subject-matter of this controversy and is the only forum vested with requisite power

379

and authority to make the necessary orders for the protection of the rights and property of the respective litigants.' We think counsel misconceived the scope of the bill and of the injunction granted in pursuance thereto . . . The bill simply asks that appellant be restrained from discontinuing its water service to complainants and the other inhabitants of the city, who are consumers of water furnished by it on account of their not paying their water bills, until the further order of the court . . . It may be that proper steps may be taken by the parties to raise the questions here presented by appellant upon the trial of the main case before the chancellor, but they do not appear to us to arise here, and in our opinion the order of the court below, overruling the motion to dissolve the temporary injunction, should be and it accordingly is affirmed."

The fact that a water company is subject to the jurisdiction of the Commerce Commission does not deprive an equity court of the power to enjoin discontinuance of water service. The rationale for this rule is well set out in Hall v. Village of Swanton, 35 A2d 381, at 382, 384:

"The plaintiffs in this bill in chancery allege that they are the owners of a single family house in the defendant village which they occupy as a residence . . . The defendant is (also) engaged in the sale and distribution of water and water service for residence and domestic purposes and since Jan. 1, 1936, it has had on file, published and in effect a fixed schedule of charges for such water and water service . . . It is alleged that the defendant, in order to enforce compliance with its demands, has threatened to shut off the water and electricity from the plaintiffs' residence and

380

has in fact at different times shut off the electricity therefrom. It is alleged that relief in a court of equity is required to prevent a multiplicity of suits and irreparable injury to the plaintiffs . . .

"An injunction will ordinarily be granted to prevent a public service corporation, or other corporation or individual, from wrongfully shutting off light which such corporation is under contract to furnish, on the theory that the remedy at law is inadequate, and that the shutting off of the supply would cause irreparable injury. 32 CJ 225 Injunctions, Sec 349; Mobile Electric Co. v. Mobile, 201 Ala 607, 79 So 39, LRA 1918F, 667, 671; Peoples Natural Gas Co. v. Amer. Natural Gas Co., 233 Pa 569, 82 A 935; Sewickly Borough School Dist. v. Ohio Valley Gas Co., 154 Pa 539, 25 A 868.

"A legal remedy in order to be adequate in the sense involved in determining the jurisdiction of equity must be 'as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.' Bourke and Higgins v. Olcott Water Co., 84 Vt 121, 124, 78 A 715, 716, 33 LRA, NS, 1015, Ann Cas 1912D, 108; Town of West Rutland v. Rutland Ry. Lt. & P. Co., 98 Vt 379, 382, 127 A 883. A remedy that might be had by these plaintiffs on application to the Public Service Commission is not considered adequate since the case presented is one that demands preventive relief. Town of West Rutland v. Rutland Ry. Lt. & P. Co., supra . . ."

The rule in regard to the power of the reviewing court to pass upon the discretion of the chancellor who issued a temporary injunction is set out in Aurora v. Warner Bros. Pictures Dist. Corp., 16 Ill App2d 273, at 285, 147 NE2d 694:

"The law is well settled in Illinois that the trial court is vested with large discretionary power in granting an order for a temporary injunction and unless the reviewing court finds that the discretion has been abused the order will not be set aside."

This rule is expressed in even stronger language in Simpkins v. Maras, 17 Ill App2d 238, at 249, 149 NE2d 430:

"The granting of a temporary injunction rests largely in the discretion of the trial court . . . and a temporary injunction should not be refused merely because the court may not be absolutely certain that plaintiff or counterclaimant has (the) right he claims. O'Brien v. Matual, 14 Ill App2d 173. An application for an injunction is addressed to the conscience and sound discretion of the court, and it is not controlled by technical legal rules, and unless a reviewing court finds that the discretion has been abused, the order will not be set aside . . ."

Additional authority for affirming the injunction in the instant case is Weingart v. Weingart, 23 Ill App2d 154, 161 NE2d 714, which quotes with approval the foregoing cases among others.

Since the complaint in the instant case was sufficient in its material allegations to make out a prima facie case, it may have been an abuse of discretion to deny the motion for a temporary injunction, rather than being an abuse in granting it. Fitzgerald v. Christy, 242 Ill App 343.

The chancellor properly preserved the status quo by granting the injunction. The record shows that the agreement in open court may, in the future, prove to be inadequate protection against precipitous action by the defendants. The majority opinion seems to

agree that the plaintiffs should be protected. In that event, there is no reason why they should bear the new burden of presenting a supplemental complaint for an injunction, when they have already shown grounds for equitable relief in the instant case.

The rule which should be applied here was succinctly stated in Gillam v. 661 Sheridan Apartments, Inc., 1 Ill App2d 11, at 17, 116 NE2d 91.

> "We are convinced, weighing the relative harm to the defendants by this injunction and the benefit to the plaintiffs, that the injunction properly preserves the status quo and does no serious harm to the rights of the defendants."

The recent case of McFetridge v. First Commercial Bank, 28 Ill App2d 512, at 524, 171 NE2d 791, reviewed and restated this rule as follows:

> ". . . where equitable grounds exist and a prima facie case is made by the complaint, the issuance of an injunction is within the sound discretion of the chancellor. The argument that the chancellor should weigh the relative harm that will be suffered by the parties if the temporary injunction is granted or denied is not relevant unless and until some ground for equitable relief is established."

The dictum from Hinson v. Ralston, supra, at 219, cited by the majority, is not persuasive in view of the overwhelming Illinois authority favoring an injunction on the bases of properly preserving the status quo and the relative harm to the parties. Furthermore, the court in that case refused to reverse the injunctions in question.

This injunction would not be an attempt by the courts to require a utility to extend its service on a permanent basis or to prescribe the rate of service.

The chancellor specifically recognized this by including in the injunctive order: "That defendants may petition the Illinois Commerce Commission for permission to discontinue the water service to the plaintiffs under the provisions of the Public Utilities Act." The chancellor also refused to consider the question of rates.

If the injunction was incidental to the basic contractual dispute between the parties, then the court below properly had jurisdiction. The contract was alleged in the complaint, urged before the court below, and argued on this appeal, i. e.: "Even assuming we are correct that defendants now may not relitigate the first Peterson case the construction of the contracts and the decrees are certainly judicial questions." It has been vigorously denied that the parties mutually cancelled the prior agreements, and this court cannot assume on appeal that no contract exists for the supplying of water. In that event, the reversal of this injunction because of supposed lack of jurisdiction would be clearly contrary to Illinois law. "An administrative agency, such as the commerce commission, is not a judicial body and it has no jurisdiction to adjudicate controverted individual property or contract rights." Mitchell v. Illinois Cent. R. Co., 317 Ill App 501, 47 NE2d 115; People v. Peoria & P. U. Ry. Co., 273 Ill 440, 113 NE 68.

The chancellor found that: "This court has jurisdiction of this cause and plaintiffs are without an adequate remedy at law." Any doubts as to jurisdiction, or whether the basic dispute should be before the Commerce Commission, that may be called from the record would not negate the equitable power to issue injunctions to prevent irreparable injury. Peoples Gas Light & Coke Co. v. Slattery, 373 Ill 31, 25 NE2d 484, indicates that a denial of the power to issue in-

junctions to prevent irreparable injury would be unconstitutional unless the statutory remedy which is substituted is adequate to prevent such injury and gives the same measure of relief.

Section 49(a) of the Public Utilities Act requires defendant to secure the approval of the Commerce Commission before discontinuing water service, unless such discontinuance can be justified according to the effective rules, regulations, and practices of the public utility. The defendant has shown neither the approval nor the justification that the statute requires.

The plaintiffs have made out a prima facie case and are entitled to injunctive relief. They, in contrast to the defendants, are not required to initiate action before the Commerce Commission. Nor should they be required to perpetually litigate their right to water service.