# WILLIAM T. FISH

## *v.*

## SAMUEL CLELAND and ELLEN B. CLELAND, his wife.

1. EACH PARTY MUST ASSERT HIS OWN RIGHTS. One party in a suit cannot assert the rights of another.

2. FRAUD — SUPPRESSIO VERI — *confidential relations.* There is no such relation of trust and confidence existing between a son-in-law and his mother-in-law, that, in dealings between them, the latter should be supposed to act upon the presumption that there would be no concealment of facts from her; and a court of equity cannot afford relief on the mere ground of such concealment in the absence of any allegation that she acted on such presumption, and where there is no evidence *from which that fact can be inferred.*

3. SAME — SUPPRESSIO VERI, *where there is no relation of trust and confidence.* Undue concealment which amounts to fraud, from which a court of equity will relieve, when there is no peculiar relation of trust and confidence between the parties, is the non-disclosure of those facts and circumstances which one party is under some legal or equitable obligation to communicate to the other, and which the latter has a right, not merely *in foro conscientiœ,* but *juris et de jure,* to know.

4. The owners in remainder of a parcel of land in Jacksonville, held a meeting, when it was concluded by them to file a bill in chancery for a partition of the property, and in order to facilitate the same, it was deemed expedient to buy the life estate of a widow of a former owner, on joint account, at the price of $2,600 to $2,800, or thereabouts; accordingly, one of those owners, representing the interest of his wife, who was a daughter of the owner of the life estate, went to Rock Island, where the widow resided, and succeeded in purchasing from her her life estate, as she alleged, at a grossly inadequate price, the party negotiating the purchase not disclosing what had transpired between the owners of the remainder, nor the purpose of his visit to Rock Island. *Held,* there was no obligation on the part of the purchaser to disclose to the vendor of the life estate that the joint owners of the remainder contemplated a partition and sale of the property, nor their estimate of the value of the life estate, nor the object of his visit to Rock Island.

5. FRAUD — SUGGESTIO FALSI. A representation of what the law will or will not permit to be done, is one upon which the party to whom it is made has no right to rely; and if he does so it is his own folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention. It is an opinion in regard to the law, and is always understood as such.

6. A former owner of a life estate in a parcel of land sought to set aside a contract of sale thereof upon the ground of fraud, alleging that the purchaser, who was one of the several owners in remainder, in negotiating the purchase

falsely represented that a sale of the property could not be made unless all consented thereto, and that one of the other owners in remainder refused to sell; but it was held that the alleged representation that one of the owners refused to sell, if untrue, was only a representation in regard to the seller's chance of sale, or the probability of her getting a better price for the property than was offered by him. Misrepresentations of this nature are not, alone, sufficient ground for setting aside a contract.

7.  ALLEGATIONS AND PROOFS.  Where there is no allegation of a given fact in a bill in chancery, evidence introduced on that subject will not be considered. The *allegata* must exist before the court can consider the *probata.*

APPEAL from the Circuit Court of Morgan county; the Hon. D. M. WOODSON, Judge, presiding.

This was a suit in chancery by Cleland and wife to set aside a conveyance and to secure the annual interest upon the proceeds of certain real estate in Jacksonville, in which Mrs. Cleland formerly held an estate for her life, but which life estate had been sold and conveyed by her and her husband to the appellant, William T. Fish, and the property subsequently sold under the decree of the court in partition.

Fraud, alleged to have been practiced by Fish in the purchase of the life estate, is the sole ground upon which the jurisdiction of the court is invoked.

The bill charges that Mrs. Cleland, as the widow of N. H. Gest, deceased, was possessed of an estate for life in 32 by 108 feet off from the west side of lot 63 in the town of Jacksonville, and that the fee simple of said premises, subject to said life estate, was vested in Lewis Hatfield, two shares, Joseph J. Cassell, since deceased, one share, Martha V. Fish, wife of appellant and daughter of Mrs. Cleland, one share, William H. Gest son of Mrs. Cleland, one share; and that on or about the 1st day of January, 1859, all of the parties holding the fee simple interest, excepting Mrs. Fish, who was represented by her husband, in various conferences at Jacksonville, determined upon proceedings in court for partitioning said premises; and with a view to such proceedings and to facilitate the same, concluded to buy or offer to buy on joint account the life estate of Mrs.

Cleland, at some reasonable price, estimating the same at some $2,600 or $2,800, or at something like that rate.

The bill charges that to effect this purchase William T. Fish went to Rock Island to see Cleland and wife; and instead of disclosing his errand, fraudulently suppressed the truth aforesaid, and with intent to defraud Mrs. Cleland, represented to her that said estate could not be sold unless all the heirs or those interested in the same were willing, and that said Lewis Hatfield was not willing it should be sold; whereas it was then true, as said Fish well knew, that said Hatfield wished said estate partitioned and sold.

The bill charges that, relying upon said representation, and believing it to be true, Cleland and wife, for the grossly inadequate consideration of $1,000, sold and quitclaimed to said Fish all her interest in said estate, which, with the fee simple interests therein, it is charged, afterwards brought at the sale under the decree in partition $7,680, and by said decree the annual interest upon this sum is to be paid to said Fish during the life of Mrs. Cleland.

It is further charged that said Fish paid for said life estate $600 cash, and gave his note for the remaining $400, upon which he afterwards paid $75. This note is offered to be surrendered.

It is further charged that said Fish has received on the following dates the following amounts of interest on $7,680: May 7th, 1860, $729.60; May 7th, 1861, $731.02; and also received under the scope of said deed to him for the life estate, from $100 to $110, as interest upon other dower funds of Mrs. Cleland, from said Hatfield, the administrator of N. H. Gest, deceased.

The bill prays that Fish be enjoined from receiving any more money under the decree in the partition suit; that he be required to pay to Mrs. Cleland the difference between what he has already paid for her life estate and what he has received under the decree in the partition suit, and also under the deed for the life estate; and that the person executing said decree and loaning the $7,680, be directed to thereafter pay the annual interest, less commissions to Mrs. Cleland during her life.

The defendant, Fish, answered the bill, and proofs were introduced, but these it is not necessary to present, as the decision of the courts rests entirely upon the allegations of the bill. A decree was rendered in the court below in favor of the complainants, setting aside the sale from Mrs. Cleland to Fish on the ground of fraud. Thereupon, Fish took this appeal.

The principal questions arising upon the record are, whether such a relation of trust and confidence existed between Fish and his mother-in-law, Mrs. Cleland, as required him to disclose to her at the time of his purchase, what had transpired between the owners in remainder at their meeting at Jacksonville, and the object of his visit to Rock Island; and further, what suppression of facts will constitute fraud; and whether there were any fraudulent misrepresentations made by Fish as would require the contract to be set aside.

Messrs. I. J. KETCHUM and H. B. McCLURE, for the appellant.

Neither courts of law nor equity adjudge conveyances to be void, or set them aside, or furnish any remedy because of any failure on the part of the purchaser to disclose the facts within his knowledge which affected the value or market price of the property, though he knew the seller was ignorant of them. 2 Kent's Com. 486, 487, 490, 491; 1 Story's Eq. Jur. §§ 205–210, 212, 213.

Where no conveyance has been executed, the above rule is sometimes departed from by courts of equity when called upon to enforce specific performance against the vendor. See authorities above cited.

But where conveyances have been executed, the only exceptions to the above rule are to be found in cases of peculiar trust and confidence arising out of the relations of the parties, such as attorney and client, guardian and ward, trustee and beneficiary, principal and surety, &c. 1 Story Eq. Jur. §§ 215–218.

Messrs. D. A. & T. W. SMITH, for the appellees, cited, on the question of fraud, *Weatherford* v. *Fishback*, 3 Scam. 172; *Sock-*

*ridge* v. *Foster et al.*, 4 id. 573; *McDonald* v. *Fethran et al.*, 1 Gilm. 295; *Whitney* v. *Roberts*, 22 Ill. 381.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

The appellees filed a bill in chancery to set aside a sale made by them to the appellant of a life estate in a town lot in Jacksonville, on the ground of fraud. The specific allegations on which relief is sought are: First. That the parties owning the remainder, held a meeting at Jacksonville, at which the appellant represented his wife, one of the owners, when it was concluded by them to file a bill in chancery for a partition of the property, and in order to facilitate the same it was deemed expedient to buy the life estate of Mrs. Cleland on joint account, at the price of $2,600 to $2,800, or thereabouts; that for this purpose the appellant, representing one of the joint owners, went to Rock Island, where Mrs. Cleland resided, and there purchased her life estate, fraudulently suppressing what had transpired between the joint owners of the remainder at Jacksonville. Second. That the appellant on that occasion fraudulently represented to Mrs. Cleland that the property could not be sold unless all the persons interested therein were willing; and that Hatfield, one of the joint owners, was not willing to have it sold, when he well knew that Hatfield wished it partitioned and sold. By means of the suppression of what had transpired between the owners of the remainder and these representations, the appellees allege that they were induced to sell the life estate in question for a grossly inadequate consideration. In the present case it is not material to define the nature and extent of the appellant's obligation to the owners of the remainder. He may have been under obligation to act for them and not for himself, but their rights cannot be asserted by the appellees, and are not involved in the present controversy. It is mentioned in the bill that the appellant was the son-in-law of Mrs. Cleland, but it is not alleged that this relationship occasioned any confidence between the parties. There might have been such a confidence growing out of this relation as to

authorize the appellees to act upon the presumption that there could be no concealment of any material fact from them, but a court of equity cannot afford relief on that ground in the absence of any allegation that the parties acted on such pre-sumption, and where there is no evidence from which that fact can be inferred. Undue concealment which amounts to a fraud from which a court of equity will relieve, where there is no peculiar relation of trust or confidence between the parties, is the non-disclosure of those facts and circumstances which one party is under some legal or equitable obligation to communi-cate to the other, and which the latter has a right, not merely *in foro conscientiae*, but *juris et de jure*, to know. 1 Story's Eq. § 207. The appellant was not required by this well established rule to disclose that the joint owners of the remainder contem-plated a partition and sale of the property, nor their estimate of the value of the life estate, nor the object of his visit to Rock Island. There is nothing shown in the case creating a legal or equitable obligation on his part to do so. The bill does not allege any misrepresentation of the value of the property or of the life estate therein, and we therefore dismiss from our consid-eration all the evidence in that regard. The *allegata* must exist before the court can consider the *probata.*

The representation of the appellant that the property could not be sold without all the parties interested therein consented, if understood to mean that a voluntary sale could not be made without such consent, was true, and one which every one must know was true; but if the representation is understood to mean that a sale could not be had by an order of court without the consent of all parties, then it was a representation in regard to the law of the land, of which the one party is presumed to know as much as the other. A representation of what the law will or will not permit to be done, is one upon which the party to whom it is made has no right to rely, and if he does so, it is his own folly, and he cannot ask the law to relieve him from the conse-quences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention. It is an opinion in regard to the law, and is always understood as such. 5 Hill,

303. We have not deemed it material to ascertain the truth or falsehood of the alleged representation that Hatfield was not willing the property should be sold. If untrue, it was only a misrepresentation in regard to the seller's chance of sale, or the probability of their getting a better price for the property than the price offered by the appellant. Misrepresentations of this nature are not alone sufficient ground for setting aside a contract. 1 Sug. Vend. 7; 12 East, 637. Our duty is to administer the law, and having discharged it, we leave the parties before the tribunal of an enlightened public and to their own consciences. Our duty does not require us to become advocates for or against them before those tribunals. The decree of the court below will be reversed, and the bill dismissed.

*Decree reversed.*