Thomas L. Owens, Plaintiff in Error, v. Union Bank of Chicago, Defendant in Error.

Gen. No. 34,840.

596

Heard in the first division of this court for the first district at the February term, 1931. ■ Opinion filed March 23, 1931.

R. Sebastian Rivera, for plaintiff in error; Clyde C. Fisher, of counsel.

Millard R. Powers and Michael Gesas, for defendant in error.

Mr. Justice McSurely delivered the opinion of the court.

Complainant filed his bill seeking the cancellation of his contract with defendant for the purchase of an unimproved lot and to obtain the repayment of $1,085 with interest from the date of the contract. Defendant filed a general and special demurrer, which was sustained by the court, and complainant electing to stand by his bill it was dismissed. By this writ of error the reversal of this order is sought.

The gist of complainant's bill is the alleged fraudulent representation made by defendant through an agent that the lot would be located in Calumet City.

The bill alleges that on July 1, 1925, complainant was approached by Charles G. Schultheiss relative to the purchase of a piece of real estate located in Calumet City, Cook county, Illinois; that on July 8, complainant went with Schultheiss to Calumet City to look over certain unimproved real estate with the purpose of purchasing the same. Schultheiss told complainant the legal title to the real estate was in the defendant and that Frank Croissant was the sales agent of defendant and that he, Schultheiss, was employed by Croissant to solicit prospective purchasers of real estate. Complainant further alleged that on July 8 he was brought to the offices of Croissant, who represented himself to be and, as a matter of fact, was the agent of

the defendant; that in an interview there had complainant informed Croissant that he would only buy the said lot if it was located in Calumet City; that thereupon Croissant assured complainant that the lot in question would be located in Calumet City. Complainant refused to accept this verbal assurance and Croissant thereupon informed him that it was within his (Croissant's) knowledge that the real estate would be in Calumet City; that he was an expert in real estate and was well acquainted with the real estate he was selling and the lot in question, and that he, Croissant, knew from most definite sources that the lot he was offering to complainant would be in Calumet City; that the defendant corporation was back of each and every one of the statements made to complainant as aforesaid and that Croissant then and there agreed to insert in the contract immediately following the description of the real estate the words, "which will be in Calumet City," and that thereupon these words were so inserted in the contract.

The bill further asserts that thereupon, relying upon these representations and the representations that Croissant had inside information that the real estate would be located in Calumet City, the complainant on said date executed the contract with defendant for the purchase of the real estate for a consideration of $2,200, of which complainant paid $725 in cash, the balance to be paid in monthly instalments of $40 each on the 10th day of each month thereafter.

The bill further alleged that all of the aforesaid representations made by Croissant were false and fraudulent and were known to the defendant to be false and fraudulent and were made with the fraudulent intent and for the purpose of obtaining complainant's signature to the contract and complainant's money; that complainant believed every one of said representations to be true and relied upon them and would never have paid the money except that he relied upon said representations.

The bill further alleged that the real estate is not located in Calumet City and it was never intended nor attempted to have said real estate located therein and that Croissant, as agent for the defendant, had no knowledge from most definite sources or from any sources that said real estate would be in Calumet City.

The bill further alleged that in the latter part of February, 1926, complainant met with a serious automobile accident causing him great expense and that as a result of this, arrangements were made with Croissant to discontinue the monthly payments on the contract, but thereafter complainant called at the office of defendant and made a payment of $40 which brought the total payments made by complainant on the contract up to $1,085.

The bill also alleged that on November 2, 1926, complainant learned facts tending to show that said real estate was about to be annexed to the Village of Lansing or had already been annexed to the Village of Lansing and that it could not be in Calumet City, and that up to that time he did not know and could not know that said real estate would be annexed to the Village of Lansing and that immediately upon learning the same he refused to make further payments on the contract. May 11, 1927, defendant sent to complainant by registered mail a "Declaration of Forfeiture" on account of the unpaid balance due on the contract; that thereupon complainant called at defendant's office and informed defendant he would not make any further payments on the contract because he had learned that the real estate had been annexed to Lansing and could not therefore be located in Calumet City, in accordance with the terms of the contract, and thereafter on May 24, 1927, complainant served notice on the defendant that he had abrogated or rescinded the contract for this reason and tendered defendant a quitclaim deed of the real estate and at the same time demanded the return to him of the amounts paid under the contract.

As a general proposition a court of equity will relieve one from the results of a forfeiture, especially where the contract has been induced by fraud. Pomeroy on Equity Jurisprudence, vol. I, para. 451. Fraud is a recognized subject of general equity jurisdiction and there is no ground upon which the jurisdiction is so readily entertained and so freely exercised as that of fraud. *Wright v. McKinney,* 287 Ill. 529. It is immaterial whether a party misrepresenting a material fact which induced a contract knows it to be false or makes the assertion of a fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another acts upon the faith of it he who induced the action must suffer and not the other. *Borders v. Kattleman,* 142 Ill. 96, and cases there cited.

The misrepresentation of the location of real estate which has induced a purchaser to enter into a contract has been generally recognized by the courts as ground for voiding the contract. In *Kertz v. Dunlop,* 13 Ind. 277, a bill was filed to rescind a contract for the purchase of lots and a demurrer to the same was sustained. The seller made representations that the City of Indianapolis had agreed to open up a street which would lead directly to the lots. The bill alleged that these representations were false and were made for the express purpose of deceiving the prospective purchaser. The order of the lower court sustaining the demurrer was overruled, the court holding that the representation as to the street was material. In *Day v. Taylor,* 123 Wash. 286, the court canceled a contract on the ground of a misrepresentation that certain streets had been opened and dedicated to the public. In *Grismore v. Utley,* 159 Ark. 479, it was held that the false representation that the land was not in a certain drainage district to which the prospective purchaser had objected, when as a matter of fact it was within the district, was ground for rescission of the contract. Upon the point made that it was the duty of the would-

be purchaser to examine the records to see where the land was located, the court held: "It would be inequitable to say to any one who, in good faith, has relied upon the express declaration of another that the land he owned was not in a drainage district, that he might have learned its falsity by going to the county seat and examining the records. The obligation of ordinary good faith precludes the vendor from seeking shelter under such a claim. . . . It is enough that the purchaser believed the statement, that inquiry was necessary to discover the truth, and that he executed the contract on the strength of the representation."

Similar circumstances were involved in *Jackson v. Meinhardt*, 99 Cal. App. 283, 278 Pac. 462, the court saying: "A prospective purchaser of land may rely upon the owner's positive statements with respect to its location, . . . and the purchaser relying on such representations buys the lot and is damaged thereby, he may maintain an action based upon fraud, either for damages or rescission."

This opinion also said that the purchaser is not required to search the records to ascertain the true location of the lot, quoting from 46 C. J. 545:

"He who practices bad faith ought not to be permitted to invoke the doctrine of constructive or imputed notice to aid his wrongdoing."

Defendant argues that the representation that the lot in question would be in Calumet City was nothing more than a prophecy or a statement of what might happen in the future and therefore not a misrepresentation of an existing fact. However, it is the law that the fact concerning which the statement is made refers to the future does not of itself prevent the misrepresentation from being fraudulent. The statement of a matter in the future, if affirmed as a fact, may amount to a fraudulent misrepresentation, as well as a statement of a fact as existing at present. Pomeroy on Equity Jurisprudence, vol. II, para. 877. This rule was recognized in *Miller v. Sutliff*, 241 Ill. 521, the

opinion saying: "While a statement of a matter in the future, if affirmed as a fact, may amount to a fraudulent misrepresentation, it must amount to an assertion of a fact and not an agreement to do something in the future." The rule is also stated in *Bielby v. Bielby,* 333 Ill. 478.

The representation which complainant's bill alleges was fraudulently made by Croissant was that he knew that the real estate would be in Calumet City; that he was well acquainted with the facts and knew from definite sources that it would be in Calumet City. We are of the opinion that this comes within the rule laid down in the above cited cases. It was not a prophecy of future developments nor a representation merely boosting the property. It was a representation as to the location of the property which Croissant is alleged to have made as based upon his knowledge of the facts. "When one assumes to have knowledge on a subject of which another may well be ignorant, and knowingly makes false statements regarding it, upon which the other relies, to his injury, we do not think it lies with him to say that the party who took his word and relied upon it, was guilty of negligence in so doing, so as to be precluded from recovering compensation for the injury." *Eaton v. Winnie,* 20 Mich. 156; *Hicks v. Stevens,* 121 Ill. 186.

Defendant argues that complainant was guilty of laches. In *Allmon v. Salem Bldg. & Loan Ass'n,* 275 Ill. 336, it was held that a court of equity will apply the doctrine of laches in denial of relief only where from all the circumstances to grant relief would presumptively be unjust. In the instant case the alleged fraud was discovered in November, 1926. Immediately thereafter complainant refused to make further payments. In the following May he received a declaration of forfeiture upon the contract from the defendant and thereupon called at defendant's office demanding a return of the payments made for the reason that the real estate had been annexed to the Village of Lansing,

and in the same month served notice that he had elected to rescind the contract. The bill alleges that between the date of serving this notice and the filing of the bill, which was on January 24, 1928, complainant at the request of defendant on several occasions called at defendant's office with a view of arriving at an agreement in the matter and was informed by defendant that complainant's rights were being considered by one authority and that a final decision was forthcoming very soon. One who has caused the delay cannot complain of laches on the part of the other party.

There is some question suggested as to whether Croissant acted within the scope of his employment. The bill alleged that Croissant was, in fact, the general agent of defendant for the purpose of disposing of this tract of land and the contract itself is signed by defendant. This was sufficient showing of the agency of Croissant.

We are inclined to hold that the allegations of the bill, which are admitted by the demurrer, sufficiently present a case calling for the consideration of a court of equity. The demurrer should have been overruled. The decree dismissing the bill is therefore reversed and the cause is remanded for further directions consistent with what we have said in this opinion.

*Reversed and remanded.*

MATCHETT, P. J., and O'CONNOR, J., concur.