**Vern C. Peterson, et al., Plaintiffs-Appellees, v. Victor Yacktman, Defendant-Appellant.**

**Gen. No. 47,728.**

First District, Third Division.

April 6, 1960.

Rehearing denied May 4, 1960.

209

Daniel H. Pappas, of Chicago (Melvin B. Lewis, of counsel) for defendant-appellant.

Harry R. Booth, of Chicago, for plaintiffs-appellees.

PRESIDING JUSTICE BRYANT delivered the opinion of the court on rehearing.

This is an action for recovery of assets of the plaintiffs now in the hands of the defendant allegedly as a

result of fraud practiced by defendant upon plaintiffs. In pertinent part, the complaint alleges that they were part of a group of purchasers of land from developers and builders to which defendant was believed to have retained title pending payment to him, by the developers and builders, of the price agreed upon. The complaint also alleges that the defendant "represented to plaintiffs and all others similarly situated, that he was engaged in the business of managing and operating a water utility" under the rules of the Illinois Commerce Commission and the laws governing the operation of water utilities and of supplying a public water service in conjunction with the construction of homes in the township. Defendant is also alleged to have "represented that he would not provide them with water service unless and until plaintiffs and other persons similarly situated would pay him a sum of money not less than $500 nor more than $5,000 for the purpose of constructing portions of the transmission mains and property and in the rendering of water service and would reconvey to him such portions of the transmission or extension of water mains, circulating mains and other similar property which they were to purchase." Defendant is further alleged to have represented "that he was engaged in the operation of a public water utility under the laws of the State of Illinois, that he had the right under such laws to compel plaintiffs and other persons similarly situated to pay large sums of money to him for the payment of transmission mains and other properties to be used in the operation of a public water utility system and that he had the right to compel them to reconvey such property as a condition to the rendering of water service to him." All such statements are alleged to be untrue and "were known by him to be false and untrue when he made such statements and were made by him for the purpose and intent of swindling plaintiffs out of

their money, out of the property they paid for, and for further purpose of compelling them to pay rates and charges for water service upon property which they and not he had paid for." Between July 1, 1956, and June 30, 1957, it is alleged that plaintiffs paid various sums of not less than $850 nor more than $1,600 for such purposes. It is further alleged that "thereafter in reliance upon the aforesaid false representations of the defendant Yacktman, all the plaintiffs herein with the exception of A. R. Starr, were thereupon induced to reconvey to the said Yacktman the transmission lines, mains and other water property and facilities for which they had previously paid him." The consideration for the conveyance was $1. It is alleged that defendant collected large sums of money from other persons similarly situated under similar circumstances and that this action was being brought on their behalf as well as plaintiffs'. Damages are also claimed for the loss of the property reconveyed. It is alleged that plaintiffs have no adequate remedy at law. It is prayed that there be an accounting, a reconveyance of the property paid for, a judgment in favor of each of the plaintiffs for $2,500 and that the monies collected by the defendant be impounded.

A motion to strike the complaint was filed on November 14, 1958, on the grounds that it failed to state a cause of action. On December 19, 1958, the court denied the motion to strike. On January 5, 1959, defendant filed motions for transfer to the common law calendar, for leave to file a jury demand and reiterated the original motion to strike the complaint. These motions were denied and when defendant elected to stand by his motion, plaintiffs were given leave to present a judgment order. The judgment order as presented contained only requests for money judgments. On January 14, 1959, judgment was entered on that order and defendant here appeals.

This case rests upon the sufficiency of the complaint as a basis for equitable jurisdiction. In substance, the complaint alleges that the defendant represented that he operated a water utility under Illinois law; that he would not furnish water to the plaintiffs unless they agreed to defray part of the cost of the transmission line; and that he had the right to so bargain.

■ The sufficiency of the complaint depends upon whether it alleges that fraud was involved in the transaction. To do so, it must show that there has been an imposition, through deception, upon some legal rights possessed by plaintiffs. Unless fraud is part of this transaction, equity could have no jurisdiction over the cause. All facts well pleaded, with all reasonable intendments, are taken as true, in accordance with the principles of construction enjoined by the Civil Practice Act. Doner v. Phoenix Joint Stock Land Bank, 381 Ill. 106, 112.

■■ In the case of Bennett v. Hodge, 374 Ill. 326, at 331, the court restated the classical elements of fraud as follows:

"It is agreed all of the following elements must be proved in an action based on fraud: (1) The misrepresentation must be of a statement of fact; (2) it must be made for the purpose of influencing the other party to act; (3) it must be untrue; (4) the party making the statement must know or believe it to be untrue; (5) the person to whom it is made must believe and rely on the statement; (6) the statement must be material."

■■ In Owens v. Union Bank of Chicago, 260 Ill. App. 595, at page 600, it is said:

"Fraud is a recognized subject of equity jurisdiction and there is no ground upon which the jurisdiction is so readily entertained and so freely exercised as that of fraud. Wright v. McKinney, 287 Ill. 529."

213

There is no general rule for determining what facts will constitute fraud; whether or not it is found depends upon the special facts of each particular case. Majewski v. Gallina, 17 Ill.2d 92, 99.

Appellant represented that he operated a water utility under Illinois law. He argues that this misstatement is not actionable because it is a representation of law rather than fact. We do not agree. In Miller, et al. v. Osterlund, 191 N. W. 919 (Minn. 1923), the court dealt with a corporate defendant which had represented that it had the authority and right to do business in the state and the authority and right to execute the contract in question. The defendant contended that this constituted a representation of law and not of fact. The court held:

"But it is not always easy to classify representations as of law or fact, often they are of mixed law and fact, and courts should not be too indulgent of defendants who have made misrepresentations as to matters of which they should be expected to have knowledge, and of which the other party ordinarily would not have knowledge. A misrepresentation though involving matter of law will be held actionable if it amounts to an implied assertion that the facts exist that justify the conclusion of law which is expressed. 26 C. J., p. 1207, § 106; Harris-Emery Co. v. Pitcairn, 122 Iowa 595, 98 N. W. 476; Myers v. Lowery, 46 Cal. App. 682, 189 P. 793.

"We think the representations complained of in this case, while they incidentally involve matters of law, are to all intents and purposes, representations of fact. To say of a foreign insurance company that it has the right to write insurance in Minnesota, conveys the meaning to the average man that the company has complied with the well-known requirements of our laws; and has received the Insurance Commissioner's license or authority to transact insurance business

214

here. The representation charged in this case was an implied assertion that such requirement had been met. Such an assertion is admittedly an assertion of facts."

See also, Myers v. Lowery, 46 Cal. App. 682, 189 P. 793, involving a representation by a hospital that it was an accredited training school for nurses.

In this case, the appellant represented that he operated a water utility company under the laws of Illinois. Impliedly, then, he represented that the fact of qualification with the Utility Commission was also true.

■ ■ Ordinarily one is not justified in relying upon a representation of law because both parties are presumed to be equally capable in knowing of and interpreting the law. Fish v. Cleland, 33 Ill. 238, 243. In the instant case, the representation that defendant operated a water utility rested upon the factual representation that the Water Commission's requirements had been met under the law of Illinois, and thus, is the basis for an action to correct the fraud.

■■■ Appellant contends that appellee had no right to rely on the representations made in that they could have found out before entering the agreements in question that appellant was neither authorized to conduct a utility business nor able to require contribution of funds to extend the lines to appellees' homes. In Linnington v. Strong, et al., 107 Ill. 295, the court said, at page 302:

"The doctrine is well settled, that, as a rule, a party guilty of fraudulent conduct shall not be allowed to cry 'negligence,' as against his own deliberate fraud. Even where parties are dealing at arm's length, if one of them makes to the other a positive statement, upon which the other acts (with the knowledge of the party making the statement) in confidence of its truth, and such statement is *known to be false* by the party making it, such conduct is fraudulent, and from it the party

215

guilty of fraud can take no benefit. While the law does require of all parties the exercise of reasonable prudence in the business of life, and does not permit one to rest indifferent in reliance upon the interested representations of an adverse party, still, as before suggested, there is a certain limitation to this rule, and, as between the original parties to the transaction, we consider that where it appears that one party has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other party has been misled, or influenced in his actions, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care." (emphasis by the court.)

That rule is followed in Antle v. Sexton, 137 Ill. 410; Howell v. Wyatt, 168 Ill. App. 651, 656; Schroeder v. Otto, et al., 240 Ill. App. 567, 601; and many other cases. In Pustelniak v. Vilimas, 352 Ill. 270, at page 276, the court said:

"When statements are of material matters of fact which from their nature may be assumed to be within the knowledge of the party making them, the party to whom they are made has a right to rely upon them, and in the absence of any knowledge of his own, or of any facts which should arouse doubt or suspicion, is not bound to make inquiries and examination for himself. (Hicks v. Stevens, 121 Ill. 186.)"

Appellant also maintains that no damage was suffered by appellees. His contention that the home owners freely contracted with a knowledge of what they were to receive before the agreement was made cannot be sustained since the willingness to so contract was induced by appellant's representations that they were dealing with a public utility, which had full power to compel such agreement as a condition to ren-

216

dering service. There is no freedom of contract, for all practical purposes, when a customer is dealing with a public utility, and appellees thought they were doing so.

■ Appellees initially paid large sums of money to appellant to assist in the installation of the lines and are now paying rates on the water used which are calculated to yield a return to the water company sufficient to reimburse it for the cost of installation. In effect, then, they are paying for the same benefits twice. They no longer have whatever interest in the property they received after the initial payment because they were induced to part with all interest in the transmission lines in a reconveyance to appellant. Under these circumstances, it seems clear that there is no merit in appellant's contention that appellees have suffered no damages.

■ ■ Appellant also contends that the action was not properly entertained in equity since the relief asked in the judgment order submitted by appellees was only money damages. A court of equity cannot adjudicate a question of damages unless there is some principle of equity involved which gives the court jurisdiction and the damages are assessable as an incident to the equitable relief sought. In cases where the claim for equitable relief fails, the jurisdiction as to assessment of damages also fails. Patterson v. Patterson, 251 Ill. 153. However, if, as in the case at bar, the equitable basis for jurisdiction is exhibited, the court of equity has the power to take away the benefit obtained by fraud and void the fraud by placing the parties in *statu quo*. Callner v. Greenberg, 376 Ill. 212; Felt v. Bell, 205 Ill. 213. The method to be used is within the sound judicial discretion of the chancellor. Illinois Minerals Co. v. Miller, 327 Ill. App. 596. In the instant case, the chancellor restored the parties to the positions they would have held if the transaction

217

had contained no fraudulent aspects. We find that the payment of money, as required, is the most effective method of placing the parties in *statu quo,* and as such, does not constitute error in the trial court.

The other contentions of appellant are also without merit and therefore the judgment of the trial court is affirmed.

Affirmed.

FRIEND, J., concurs.

BURKE, J., dissenting:

The complaint fails to allege ultimate facts entitling the plaintiff to relief in equity or a judgment at law. Rule 31 of the Civil Practice Act requires substantial averments of fact to state a "cause of action at law or in equity." The alleged misrepresentations attributed to the defendant were as to matters of law. The law is presumed to be equally within the knowledge of all parties. Statements of domestic law though false and fraudulent do not generally constitute actionable fraud. Plaintiffs' cited cases do not support their position on this point.

Plaintiffs say that the mere existence of a transaction under which they acquired property for hundreds of dollars and then conveyed it for $1 "was in itself evidence of fraud." The principal benefit that accrued to the plaintiffs was that their property became connected with a water distribution system which furnished water to their residences. Furthermore, plaintiffs are chargeable with knowledge equal to that of defendant as to the matters purportedly misrepresented to them. Plaintiffs' complaint asked that defendant be required to reconvey to them "the property which they paid for" and that plaintiffs have judgment for the sums paid by them. It is obvious that

by asking for the return of the amounts paid by them, plaintiffs gave up all right in the property which they paid for. On the other hand, if they wanted the property "reconveyed" to them, plaintiffs could not maintain the action to recover the purchase price. A reading of the complaint makes it clear that plaintiffs did not convey to the defendant and in fact did not own anything except money. They allege that they paid money to the defendant for the purpose of paying the cost of portions of a water system to be placed in public streets. Plaintiffs do not assert that the defendant overcharged or asked them to pay more than the system would cost or was worth. It is difficult to comprehend how plaintiffs who joined many others in contributing to the water system can maintain what amounts to a partition suit to have certain portions of the system struck off as belonging to them, thus blocking the flow of water to everyone further down in the system.

The only misrepresentations ascribed to the defendant are that a utility was operated under Illinois law, that he would not furnish water to the plaintiffs unless they paid a portion of the cost of the system and that he had the right to do this. Plaintiffs do not show how they were damaged. They do not claim that they spent more than the value of what was received, nor do they claim that the consideration received by them is worth less than would be the case if the "misrepresentations" had been true. The complaint does not suggest that but for the "misrepresentations" they would have chosen to do without the water system.

The complaint improperly sought class relief. Under the allegations there can be no representative suit. Any contributor to the water system who "rescinds" his deal would have an interest adverse to other "represented" plaintiffs further down in the system, whose water would be thereby literally cut off.

219

The named plaintiffs cannot be given the right to force other persons served by the water system to rescind the transaction by which their homes are furnished water. Defendant stood by his motion to strike when the plaintiffs were seeking to rescind all his transactions with anyone and to impound all his funds. When the plaintiffs presented their motion for judgment at common law the defendant urged that he be given an opportunity to answer the complaint if the issues be thus limited and for a jury trial. The defendant indicated clearly that he desired to controvert plaintiffs' allegations which did not state any ground for relief or cause of action. Plaintiffs obtained their judgment on the theory that defendant fraudulently misrepresented that he was a utility. Now plaintiffs argue that defendant was a utility and had "monopolistic rights assuring him of superior bargaining power." Plaintiffs allege that their area was not served by a water utility. There is no allegation that the defendant was the only utility that could have entered the area. There is no apparent reason why the plaintiffs and their neighbors could not have formed a Water Service District (Sec. 213, Ch. 111⅔, Ill. Rev. Stat. 1959), nor does any reason appear why they could not have established a Water Authority had they so desired. (Sec. 223, Ch. 111⅔, Ill. Rev. Stat. 1959.)

Plaintiffs argue that they have shown damages because the established principle of utility rate making is that customers pay for the service and should not be called upon to build a utility property. There is no suggestion in the complaint that plaintiffs were called upon to build a utility property but only to pay for portions of the cost of transmission mains to connect their property with the system, which charges are customarily paid by subdividers and developers as a matter of course. The case of Willens v. City of North Lake, 19 Ill.App.2d 316, has no application to the in-

stant case. There the contractor was told that a specific ordinance required a specific act of payment. No such ordinance existed and there was no reason why the contractor would have made the payment had he known that the ordinance did not exist.

For these reasons the judgment should be reversed and the cause remanded with directions to sustain defendant's motion to strike the complaint and for further proceedings.