In re MARRIAGE OF DOROTHY M. LIPKIN, Petitioner and Counter-respondent-Appellee, and ARCHIE LIPKIN, Respondent and Counterpetitioner-Appellant.

Fourth District    No. 4—90—0301

Opinion filed February 6, 1991.—Rehearing denied March 7, 1991.

Richard J. Watson, of Champaign, for appellant.

Lawrence E. Johnson, of Lawrence E. Johnson & Associates, P.C., of Champaign, for appellee.

PRESIDING JUSTICE LUND delivered the opinion of the court:

Respondent Archie Lipkin appeals from an order of the circuit court of Champaign County granting petitioner Dorothy Lipkin relief under a petition to modify a supplemental judgment of dissolution of

marriage and from the trial court's denial of a motion for reconsideration.

The relief granted by the trial court was based on count II of the petition to modify, which set forth the allegation that respondent made false representations concerning the revocability of the survivor benefit plan provided for under his military pension. To understand the present proceedings, consideration must be given to the prior litigation between the parties.

Petitioner and respondent were married in 1941. Respondent served in both the Army and Air Force during the marriage. On June 12, 1978, petitioner filed a petition for separate maintenance. After litigation, an order for separate maintenance was entered on June 11, 1979. The order provided that the parties had previously divided the marital assets and properties and that such division was fair and equitable. Pursuant to the parties' agreement, petitioner took possession of the car and family home, and respondent received cash, stocks, and bonds valued at approximately $94,000 at the time of their separation. The court additionally ordered respondent to pay $300 per month in maintenance to petitioner. Although respondent was retired at the time of the order, no specific mention was made of respondent's pension.

Nearly four years after the trial court entered its order for separate maintenance, petitioner filed a petition for division of pension benefits. The trial court granted respondent's motion to dismiss, reasoning that the 1979 order was final and appealable, and further consideration of the division of marital property was barred under the principles of *res judicata.*

On July 10, 1985, petitioner filed a petition to modify her maintenance. Respondent filed a counterpetition for dissolution of marriage, alleging that the property interests of the parties had been divided by the 1979 order. The trial court dissolved the marriage of the parties on October 28, 1986, reserving for future consideration any matters concerning division of property or maintenance which had been left unresolved by the 1979 order.

The supplemental judgment of dissolution resolved the remaining issues. As to marital property, the court approved and confirmed the division and distribution of marital assets provided for in the 1979 order for separate maintenance. Petitioner appealed.

In *In re Marriage of Lipkin* (1987), 163 Ill. App. 3d 1033, 517 N.E.2d 41, we affirmed the trial court's decision that the 1979 property settlement agreement included the award of respondent's military pension benefits to respondent and effectively barred petitioner

from obtaining any portion of those benefits during respondent's lifetime. Our decision in 1987 would have *res judicata* effect upon any present claim for respondent's current monthly military pension benefits. The issue presented here deals with the benefits provided by Federal statutes to those who survive recipients of military pensions.

Subsequent to the dissolution of the parties' marriage, respondent cancelled a survivor benefit plan which would pay petitioner half his retirement pension payments if he predeceased her. Upon learning of the cancellation, petitioner filed a petition to modify the supplemental judgment of dissolution of marriage. Count I of that petition was based upon a theory of a mutual mistake, *i.e.*, that the survivor annuity would continue in effect after divorce, and could be terminated only by the surviving spouse's death or remarriage while receiving the surviving benefit. Count II of the petition alleged that the respondent knowingly misled the petitioner to believe the survivor benefit plan could not be terminated other than by her death or her remarriage. Petitioner further alleged the potential survivor benefit was a material provision in the original agreement and, with its cancellation, she faces the possibility of having insufficient funds to pay for her support following respondent's death.

The parties' testimony established that, at the time respondent petitioned for dissolution, respondent was 73 years of age and petitioner was 64 years of age. Petitioner testified that during the time the parties were negotiating the division of their marital property, respondent assured her that the survivor's benefit "could never be cancelled unless, at that time, unless I died or remarried if there was a divorce." Petitioner also stated that she believed what the respondent had said, and that she considered the benefit to be like a life insurance benefit. She relied upon respondent's assurances when entering into the separate maintenance agreement which provided that respondent would receive all of the income-producing marital property. Petitioner has not remarried.

Respondent testified that while stationed in the Philippines and England he was "the expert" on survivor benefits under military pension. He stated that he knew long before his retirement that he could revoke the annuity if he divorced the petitioner. However, respondent contended, he never discussed the question of whether the survivor benefit plan was revocable with petitioner.

The trial court denied the relief requested in count I of the petition. As to count II, the trial court specifically found that during the negotiations on the separate maintenance agreement the respondent represented to petitioner that his military survivor benefit plan, then

in effect with petitioner as beneficiary, could be revoked only in the event petitioner remarried after respondent's death, and that she could rely on the availability of the survivor's benefit plan as security for her retirement years in the event he predeceased her. The court further found that at the time respondent made such representations, he knew he could cancel the survivor benefit plan in the event that the parties' marriage was dissolved. The court held petitioner relied upon respondent's false representations concerning the irrevocability of the survivor benefit plan in selecting non-income-producing assets in the division of property. The court ordered respondent to restore the petitioner to the status she enjoyed before he cancelled his survivor benefit plan by causing the survivor benefit plan to be reinstated, or by purchasing an annuity which would provide identical benefits to petitioner that she would have received from respondent's survivor benefit plan, or by creating and funding an irrevocable trust which would provide benefits to petitioner identical to those she would have received from the survivor benefit plan.

Respondent contends the trial court's determination that he made a misrepresentation of material fact was against the manifest weight of the evidence.

A misrepresentation, in order to constitute a fraud, must consist of a statement of material fact, false and known to be so by the party making it, made to induce the other party to act, and, in acting, the other party must rely on the truth of the statement. (*Roth v. Roth* (1970), 45 Ill. 2d 19, 23, 256 N.E.2d 838, 840.) The distinction between representations of fact and law is well established. Generally, one is not justified in relying upon a representation of law as both parties are presumed to be equally capable of knowing and interpreting the law. (*Fish v. Cleland* (1864), 33 Ill. 238, 243; *Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, 1135, 404 N.E.2d 1026, 1030; *Peterson v. Yacktman* (1960), 25 Ill. App. 2d 208, 215, 166 N.E.2d 452, 456.) The Illinois Supreme Court best explained this maxim more than 120 years ago in *Fish*:

> "A representation of what the law will or will not permit to be done, is one upon which the party to whom it is made has no right to rely, and if he does so, it is his own folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention." *Fish*, 33 Ill. at 243.

Survivor benefit plans are a creature of Federal law. Any right to create, modify, or revoke such plans is prescribed by Federal statutes. (See, *e.g.*, 10 U.S.C. §§1447 through 1455 (1976).) Respond-

ent's assurance that his survivor benefit plan was irrevocable unless the petitioner predeceased him or remarried after a divorce was not a representation of fact but rather a representation of what the law would permit to be done. It would appear that, regardless of the respondent's special knowledge of military pension law, the petitioner could not justifiably rely upon his representations. The lack of justification appears to negate a right to pursue a fraud theory.

■■ Regardless of our position on the issue of fraud, we find the trial court was correct in ordering relief to petitioner. That court specifically found that the survivor's benefit was considered in 1979, and respondent made assurances that the contingent benefit could only be revoked by petitioner's remarriage. This finding was based upon petitioner's testimony and upon the evidence of the continuance of the benefit's existence, until respondent terminated it after the dissolution. The trial court is best able to judge the credibility of the witnesses, and its determination of fact will stand unless it is against the manifest weight of the evidence. (*In re Marriage of Mitchell* (1981), 103 Ill. App. 3d 242, 246, 430 N.E.2d 716, 719; *Vesolowski v. Vesolowski* (1949), 403 Ill. 284, 292, 85 N.E.2d 695, 700.) It was not against the manifest weight of the evidence.

A caveat is necessary because of our 1987 opinion. In that opinion, we held the pension was an allocable asset at the time of 1979 separate maintenance agreement and was covered by the following provision:

" '[7.] That the parties hereto have previously divided the marital assets and properties between them and that such division is fair and equitable.' " (*Lipkin*, 163 Ill. App. 3d at 1034, 517 N.E.2d at 42.)

The respondent received the entire pension (less the survivorship deduction) after 1979, and it was thus correctly considered allocated to him. The survivor's benefit was a separate and distinct property interest, and its continued existence would only benefit petitioner, subject to the contingency of survival. Even though it is of a contingent nature, because of the age difference of the parties, it would have a determined value, computed by using life-expectancy tables. Having a value, it was a marital asset which the evidence established, as determined by the trial court, was intended for petitioner. Respondent's action in destroying this benefit was interference with a provision of the separate maintenance settlement agreement which, like the respondent's right to his pension benefits, was adopted by the dissolution judgment. Provisions of a judgment of dissolution provision may be enforced by order of court. Ill. Rev. Stat. 1989, ch. 40, par. 511.

We conclude the court's order directing respondent to provide for reinstatement of the contingent survivorship benefit or, in the alternative, to adequately fund an equivalent benefit was proper and should be affirmed. The trial court has adequate ability and authority to supervise the enforcement of its order.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.